Raymond Bolaños for the Appellant and Plaintiff, Inket Ink Information Resources, Inc. The Court sent out a notice to counsel to prepare argument on the issue of standing. I was wondering if the Court had any questions on that or any other issues in the case. What's your view? Before I started. I'm sorry? What's your view of the standing and how we have to analyze it? Well, I believe the cases that the Court cited in its notice, the first being Hudson Valley, are right on line with the plaintiff's position. Hudson Valley is very explicit. If I may turn back for a moment to the defendant's or the appellee's moving papers in this matter, where the Court may be aware that Sun moved to dismiss the plaintiff, Ralph Jackson, in the underlying matter based on his lack of standing. And it made the argument that Jackson did not have standing, but and implied explicitly, in fact, that the corporation did. That order was not appealed, right? That's correct. That's correct. And that's why I was curious why the Court was bringing it up, if there may be a waiver issue or, frankly, that it's already been resolved. It's not a waiver issue. But, you know, to me it's kind of curious that a corporation which doesn't have a racial identity should have standing to, you know, raise a racial discrimination claim. Right. And that issue has been ‑‑ I understand that some dicta, as I would characterize it in Arlington Heights, suggested that. But I believe Hudson put that to rest. And specifically it says that ‑‑ That's not a Ninth Circuit case. So we have to ‑‑ That's correct. We have to decide the question here. It's an open issue here. Well ‑‑ So tell us how you think we ought to decide. All right. Well, I can cite you some law. There's a ‑‑ well, I can tell you, I guess you're aware of what all the other circuits have said. But if the corporation does not have standing and individuals, either shareholders, officers or employees of that corporation cannot bring such an action, then 1981 claims discriminating against entities or individuals associated with those entities and exercising their right to contract through those entities have no remedy under 1981. They'd be barred in the Ninth Circuit. I would say the 1981 claims in the Ninth Circuit would be no more. Because most people do business through entities. And these are people exercising their rights as people of color to enter the workplace on an even footing. And the Congress clearly has made ‑‑ has given them those rights by passing the civil rights statutes and recognize that they need protection. So if you do not grant the entity standing, then the individual rights under 1981, or the rights that 1981 is designed to protect, will not be enforced. And that ‑‑ I want to cite the court some law. Des Vergnes v. Seekonk Water District, 601F2nd at 9. It's a First Circuit case, 1979. And in that case, a nonprofit low‑income housing developer in Massachusetts sued for discrimination when it was disallowed water access for its development on the basis that black people were going to live in that development. And the First Circuit recognized the corporation's standing and said that a person has an implied right against any other person who, with a racially discriminatory intent, interferes with his right to make contracts with nonwhites. So essentially what other courts and circuits are saying in granting standing to corporations under 1981, is that if those corporations are asserting their claim based upon the allegation that their association with nonwhites is the reason for the discrimination, then they have standing. And that's pretty clear in most of the case law that I would cite to the court. And I'm just going to leave ‑‑ You can leave gum ‑‑ we call them gum sheets with the clerk. Oh, all right, Your Honor. Talk to the clerk afterwards. Rather than take your time now going through the new cases, you'd like to have us take a look at it and just list the cases, and the clerk can assist you after argument today. That's very helpful, Your Honor. So the cases that I would list would essentially support the assertion that I'm making. I'd like to take up, if I can, and then reserve some time on the issue of leave to amend, because I believe the main issue on this appeal is the district court's abuse of discretion in refusing leave to amend. I think the question that this panel has to decide is, based upon this record, is it absolutely clear that Thinkit, Inc. does not have a cause of action under 1981 or under breach of contract? Does the December 1994 MSA, contract number 1477, preempt essentially all interaction or relationships that Thinkit, Inc. would have with Sun in this case? Because of its arbitration provision, does it demand that anything that Thinkit, Inc. alleges that Sun did to it has to go to arbitration? I don't think that's the case. Now, did the plaintiff's original complaint make it clear that there were non-arbitrable causes of action that it could assert against Sun and maintain in the district court for breach of contract or for 42, breach of 42 U.S.C. 1981, or discrimination under that statute? Clearly, the district court did not agree that there were. But the court did deny leave to amend. It does not appear as though – oh, not that it doesn't appear. There is no finding in the lower court that it would have been futile to grant leave to amend. In fact, the court stated in page 6 of its order of dismissal that the complaint makes no allegations that any particular contract for work was breached by Sun. Thus, service agreements 04610995 and 14610696 are not directly related to the claims made in the complaint. I believe that was an error, and I believe that finding alone required the court to give the plaintiff an opportunity to tell it how Sun breached those agreements and how those agreements can be separate from the – what is being called the master service agreement. Did you file a proposed amended complaint with – or submit a proposed amended complaint with the motion to reconsider? Your Honor, yes. What happened with that? That was apparently ignored because the motion to reconsider was denied and there was no reference made to the merits or the viability of that complaint. What did you put in this proposed amended complaint that you didn't have before? Well, Your Honor, I was not the attorney in the lower court, but what was put in was a cause of action for breach of contract 1461, which is a contract that does not contain an arbitration provision. There was also allegations of discrimination under 42 U.S.C. 1981 that arose out of contract 1461. I believe what – Was 1461 one of the two contracts that were dismissed on statute of limitations grounds? No, Your Honor. The statute of limitations claims were solely relating to the 42 U.S.C. 1981 claims. Right. I'll say it again. The – this panel needs to find that 1477 essentially governs everything that Thinkit Inc. and Sun do in a contractual relationship, and it requires Thinkit Inc. to arbitrate discrimination claims and breach of contract claims. And I don't think on this record that the lower court certainly and this panel can find that. And I believe that the plaintiff needs an opportunity to file an amended complaint to show the district court again why discrimination claims and breach of contract claims can arise out of 1461, cannot be related to 1477, and can survive a motion to compel arbitration. And I believe that there may not be – there is not a finding in this record that precludes that possibility. And I believe the liberal rules of pleading and the rules of 12b-6 require such a result. And I'm going to reserve until after panel. Can I just ask you real quickly? She did give you permission to file an amended complaint, though, right? There was no – there was no – as far as I can tell from the record, Your Honor, there was no permission granted to file an amended complaint. There was no opportunity given, and there was no – there was no offer. There was an – In the order denying the application for leave to file a motion for reconsideration? Yes. Doesn't she give you Jackson and file an amended complaint under the provisions of the court's June 11 order? Yes, Your Honor. The plaintiff, Ralph Jackson, was invited to file an amended complaint. The plaintiff, Thinket, Inc., was not. It was solely Ralph Jackson. He was – his – the motion against him was granted with leave to amend. The motion against Thinket, Inc. was granted without leave. Gotcha. Now, correct me if I'm wrong, but it seems to me Sun has contended that the two contracts to which you referred in the proposed amended complaint were simply service agreements. Is that right? Well, it's not right, and – I mean, that's their contention. Oh, that is their contention. Yes, Your Honor. How do you respond to it? Well, there is contradictory evidence in the record. I am aware, and obviously the court – the lower court was very aware of such an arrangement in most companies. You have a master services agreement which gives you the right and standing to then bid on subsequent agreements. There – if you look at – if Thinket, Inc. is given the opportunity to amend, they will allege that 1461 is a separate MSA and that 1477, the one with the arbitration provision, expired after one year from December 1995 and that 1461 survived. Thinket, Inc., if you notice, at page 43, tab 6 of the appendix, 1461 was signed apparently on October 7, 1994. It predated what Sun is calling the MSA. There is also an amendment to 1461 at – You've got 1461-0995. That's correct. I'm sorry. Is that the amendment? Yes, 1461-0995. This is what Thinket, Inc. will allege is a separate agreement, its own master services agreement. Page – tab 7, page 50 of the appendix is a document entitled Thinket, Inc., Information Resources, Inc., Master Services Agreement Amendment, which suggests that 1461 is its own standalone agreement. There is also – Again, when you're talking about – there seems to be two 1461s. I'm sorry. 1461-0995 is the – That's the one you're referring to. Right. That's the one that I'm referring to. All right. There is a price inserted for work performed – for work to be performed. It says master services agreement number 1477. If Thinket, Inc. has the opportunity to amend, it will allege that this is an error, that this should say 1461-0995. This is at page 104 of the appendix. Because 1477 had expired by this time – I'm sorry. Yes. 1461 had expired by this time. It expired in December 1995. There is nothing extending it. And if 1477 is indeed only a master services agreement, it would have no amendment that references a price and a specific type of work to be provided. So there's a lot of confusion in Sunn's underlying documents that it attached to its 12B6 motion under the law that allows it to do that. There's a lot of confusion. There's nothing in the record that establishes conclusively that Thinket, Inc. could never state a claim that is not subject to arbitration. Mr. Bolanos, after the Court denied your motion for reconsideration, preventing you from amending, it seems to me you could have filed a separate action under the 1461 contracts. Did you do that? Well, again, I wasn't the attorney at the time. What happened was all the claims were placed into arbitration. Including the 1461 claims? Including the 1461 claim, yes, Your Honor. And it appears from the – I believe Sunn has made the argument. Are they in arbitration? Are they in arbitration now? No, that arbitration has been concluded. Been concluded. And there may be an issue about that in this appeal, and I think it's somewhat prejudicial and unfair for Sunn to attach as a request for judicial notice the subsequent procedural history of this case when it was further mishandled by Plaintiff's counsel when it got into arbitration. The question is, should it have been sent to arbitration in the first place without one more bite at the pleading apple, the right to amend? Go ahead. And I just don't think it's fair to look at what happened in the arbitration when it's not part of the record and it's not part of the issue on appeal. May I back up to make sure I understand what happened in the district court? Your client filed a motion for reconsideration, and the district court, with a complaint attached, the district court denied it, but then it said that Plaintiff Jackson may file an amended complaint. Was that just limited to the individual? That's correct. I see. That's correct. I got you. So the court essentially did reiterate its offer to Jackson to amend. Why not offer the same opportunity to Thinket, Inc.? Well, she rejected it based on failure to comply with the local rules. And so essentially what the plaintiff is being penalized for is the failure of his counsel at the hearing or even in the opposition papers to say, may I have one more opportunity, Your Honor. And that would seem to be extremely punitive and draconian to deny him that opportunity if he asks, albeit in a potentially procedurally inartful way, to have that opportunity. All right. Thank you. Good morning. May it please the Court. I'm David Fallick on behalf of Sun Microsystems. Initially, I want to thank the Court for allowing us to address the standing issue because Thinket does not have standing under Section 1981. In Arlington Heights, the Supreme Court said that as a corporation, the plaintiff in that case had no racial identity and could not be the target of racial discrimination. The Supreme Court has never disowned or disavowed that statement. Moreover, this Court and the California Supreme Court have held that a corporation is separate and distinct from its members, even when the corporation is owned by a single shareholder. Furthermore, the origins of the ---- So basically there's no remedy. That's what you're saying. Not under Section 1981. But that shouldn't guide the decision because ---- No, I'm just asking for your position on it. Under Section 1981, there is not a remedy for the corporation. In a case like this, I mean, Arlington Heights talks about a corporation not having a racial identity. But in a case like this where it's a minority-owned business and designated as such, why isn't that a sufficient designation of a racial corporate identity to meet the standing requirements under 1981? Because corporations, the black-letter law of corporations is that they are separate. Sure. From their owners. Sure. But in a sense, these are sort of peculiar entities. And because they are designated as or they have received designation as minority-owned, the question is whether that designation is sufficient to confer standing on a corporation that would not otherwise exist potentially. Tell me why that isn't a logical interpretation of Arlington Heights. If you ---- So the question is if a corporation in this instance think it has a racial identity, why can't it assert a claim? Well, it does have a racial identity for regulatory purposes. It's a minority-owned business, right? Well, because ---- You cannot get that designation without meeting certain criteria. I assume that's correct. Right. So why isn't that under Arlington Heights, even if we accept that as something other than dicta? You know, we take Supreme Court dicta seriously, too. But still, why isn't this, even if you grant the general rule, why isn't this an exception? Because you have to look then at the origins of Section 1981. Section 1981 was enacted under the 13th Amendment, which was to abolish slavery. Corporations were never subject to slavery and were never ---- could not have been contemplated by the drafters of the 13th Amendment to encompass corporations. They're artificial people. That's correct. But now we've evolved since the century. We've got artificial people who have, for certain regulatory purposes, a racial identity. But corporations don't share the same attributes and rights as individuals. They don't have the right to privacy, the right against self-incrimination. They don't vote. Racial discrimination is a purely personal experience that corporations, as artificial entities, simply can't experience. All right. So then your argument is that Jackson doesn't have standing. Why? Jackson doesn't have standing because any claims belong to the corporation. But the fact that he does not have ---- the fact that Thinket does not have standing under Section 81 doesn't bar the door to the courthouse for these kinds of claims. There are potential claims under Business and Professions Codes, Section 17200 that ---- But they'd bar the federal courthouse, probably. Perhaps. Yeah. I mean, they'd have to be a state law claim. Perhaps. But it wouldn't bar the door to a discrimination-related claim. All right. All right. I think I understand your position on standing now. The other issue in this case that bothers me is the leave to men. Why shouldn't the plaintiff been given leave to men? It seems to me he could have stated a viable claim under the 1461 contracts, no? He might have been able to state a viable claim under the 1461 contract. And, in fact, he did, as counsel pointed out, he did attempt to include a 1461 claim for breach of contract 1461 in his proposed amended complaint. However, it was not an abuse of Judge Ilston's discretion to deny, think it leave to amend, because the contract on which his initial claim was based was the 1477 contract. His ---- the thrust of his original complaint was that Sunn did not give him any additional business. That was the thrust of that complaint. That claim could only have arisen under contract 1477. Adding a claim about the service agreements would not have saved any of the post MSA claims from arbitration. And, Judge Tashima, you're right that he could simply have gone out and filed a new amended complaint alleging a claim under 1461, and given that the claim under 1461 was unrelated to the claim under 1477, it wasn't an abuse of discretion for the district court to deny leave to amend. And we cited a number of cases in our brief that stand for the proposition that if unrelated claims or facts are sought to be pled in amended complaint, it is not an abuse of discretion to deny leave to amend under those circumstances. This leads to my next question now. You filed a request for judicial notice, right, which is opposed. You haven't gotten a ruling on that yet, have you? Is that right? That's correct. But the subject of that is these ---- the arbitration, is that right, part of the subject of the judicial notice? Yes. And is it correct that the ---- there's some claim with respect to the 1461 contracts that were also arbitrated? Is that right? There was a breach of contract claim arbitrated. I just don't know off the top of my head whether it was 1461, but I can check my notes on that. 1477, you mean? It almost certainly was 1477, but the ---- You don't know whether they included anything else? Well, I do know that the demand for arbitration on its face, and I believe that we do include that in our request for judicial notice. That's a plaintiff's demand. Yes. The demand said all of the claims in the second ---- in the proposed second amended complaint. Well, in that ---- that arbitration has been completed, right? Yes. And awards have been entered. Awards have been entered, and what's the award? The award was in favor of Sun. Which means you don't have to go to court for, you know, in order to enforce it, right? That's correct. To enforce itself. That's correct. So doesn't that make the ---- any possible amendment moot in this case? Because it's already been ---- If it ---- It's already been arbitrated. If it has been arbitrated, it would be moot, and I can, you know, it would take me a few moments to confirm that, but that's correct. Well, is it in the ---- is it in the papers as to which you request judicial notice exactly what's covered in the arbitration? Yes. And I looked at that real carefully because we haven't ruled on the order yet. I mean, on the motion. I think it filed a ---- the arbitrator asked, I think, and it's at tab G of the request for judicial notice, a statement of claims for arbitration. The arbitrator was somewhat confused about what claims Thinkett wanted to arbitrate, so he asked for a bill of particulars. And the breach of contract claim appears the ---- apparently the only ---- at this point, I only see 1477 in that bill of particulars. But Judge Ilston's order simply didn't bar him from filing a new complaint. In fact, Ralph Jackson did file a new complaint after Judge Ilston's order. In state court? In state court, yes. Based on what? The FEHA or? Claims under the Unruh Act, negligent and intentional supervision, and intentional infliction of emotional distress. I gather you concede diversity is citizenship? No, there is no diversity because Sun is a ---- Sun and Thinkett are both California residents. Well, in the second amended complaint, Thinkett alleges that Thinkett is a California corporation, but that Sun is a Delaware corporation. But Sun has its principal place of business in Mountain View. Right. I didn't bring ---- of course, you didn't file a proposed answer to that, but I gather what you're saying for purposes of argument today that you would contest diversity. There is no diversity jurisdiction. That's correct. And I have nothing further unless the Court has any questions. No, I don't think so. Judge Silverman, any questions? No, thank you. All right. Thank you, Mr. Follett. Rebuttal? Yes, Your Honor. I want to just move really quickly to the standing issue. There is a Ninth Circuit case on the issue, and that is Hallett v. Wend Investment Company, 672 F. 2nd, 1305. It's a 1982 Ninth Circuit case. And what's the page? I'm sorry. The page is 1305. 1305. 672 F. 2nd. That case held that a white gentleman did not have standing under 1981 to bring suit based upon an adults-only policy at a housing project. That case had subsequently been interpreted by the Northern District as having this one ---- this requirement before a court finds that a nonwhite or someone else does not have standing under 1981, it must find that someone else does have standing. So I would argue that existing Ninth Circuit law requires that before you deny standing to an entity or an individual under 1981, you must find that someone else theoretically could bring that action. And that's the Hallett case. The issue of the request for judicial notice is somewhat troubling, but I want to back up for a second to Judge Tashima's question regarding 14610995 and whether those claims were arbitrated. First of all, well, let me back up to the question of mootness. In the record, is the ---- is this Court's earlier order in this case denying the appeal because this Court held that you cannot appeal an order compelling arbitration until you complete the arbitration? If the Court is now to take the position that you've completed the arbitration and the issue of whether or not we should have sent you there in the first place is moot, then I wonder whenever an order compelling arbitration can be appealable. So I believe that position is going to contradict this Court's earlier ruling and order or, I'm sorry, I should say memorandum of March 2nd, 2000, in which the appeal was dismissed for lack of jurisdiction. Kennedy. But if you follow that reasoning, though, that line of cases, if you say, well, you can't appeal until after the arbitration is completed, arbitration is completed, if this arbitration was completed and no appeal was taken, right? This appeal is from the arbitration. This appeal is from the final judgment, because there was no final judgment of judge ---- following Judge Olson's order. The matter was sent to arbitration. It was then ---- No, no. No, this is a judgment. No, no, no. What I'm saying is, so there was an arbitration. In other words, you know, one of your content is, well, it was a mistake to dismiss this case, right? That's what ---- Yeah, that's correct. But anyway, that was done. And so as Judge Thomas says, there's a judgment. But what I'm getting at is, so there was an arbitration, and you didn't appeal from the arbitration. No, we did, because the arbitration ---- Is that pending now somewhere? I believe it's in here, Your Honor, because we amended the judgment following receipt of the arbitrator's decision. What do you mean by amended the judgment? District court judgment? Yes. We're not ---- I missed that. We are not appealing the arbitrator's substantive findings or conclusions of law or fact. We're appealing the fact that we had to go to arbitration in the first place. That's what we're appealing from the judge. I understand that. I understand that. But the amended judgment does not attach the art ---- does not indicate that it is from the arbitration. We don't have any appeal. The amended judgment was ---- well, the judgment was amended after the arbitration was completed? That's correct, Your Honor. Pursuant to the stipulation of parties, that one begins. That's correct. It's page ---- The amended judgment of August 6th? That's correct. That's correct. And we did that, I believe, pursuant to this Court's memorandum of March 2nd, 2000, which instructed us to complete the arbitration before you will ---- you can appeal. There's just one ---- Did you represent Thinkett in the arbitration? I did. Okay. Was the 14 ---- were the 1491 claims the subject of arbitration? Can you tell us? 1461. I wanted to address that quickly. 1461. Thank you. This is one entire relationship. And I think the individual contracts, breaking up the claims pursuant to the individual contracts, is only important for purposes of deciding which of those are required to be arbitrated. But if you read Thinkett's complaint, the assertion that 1461-0995, the March 95 agreement, is not part of that complaint is just wrong. It's right at page 2 of the complaint. I'm sorry. Page 6 of the ---- page 7 of the complaint, paragraph 18, on or about March 24th, 1995. Plaintiff and defendant entered into a written contract. Okay. Now ---- 1461 was part of the ---- Maybe I missed your answer to that. I'm sorry. So I gather you concede that the 1461 contracts form part of the arbitration because everything that was ---- is that ---- Well, it was really the entire relationship. But, yes, Your Honor, although I did not initiate that arbitration and the ---- according to Sun's request for judicial notice, which I hesitate to cite only because I do not believe it's properly before this Court, 1461-0995 is not mentioned in the statement of claims. But, again, it's the entire relationship between Sun and the plaintiff, 1992 and 1997, which is the subject of breach of contract claims and discrimination claims. And whether ---- which of those claims are required to be arbitrated is the only issue that really requires a breaking up of the case into contracts. So I think 14 ---- the entire relationship was on trial in the district court, including 1461-0995 and 1477. Okay. Now, the amendment proposed by your prior counsel added the breach of contract, breach of covenant, of good faith and fair dealing, and what else? Well, if given the opportunity to amend, Your Honor, the ---- I know what you would do. You would do something different. That's right. I would. But I'm focusing on what your prior counsel ---- as I read it, it was the breach of contract, breach of covenant of good faith and fair dealing, and you mentioned a third. 42 U.S.C. 1981 discrimination. Based on those contracts. Right. Now ---- Now, the breach of contract and breach of covenant claims, if there's no diversity, there would be no jurisdiction absent the 1981 claim, right? That's correct. I believe you're right. And what's your position on diversity? Well, I ---- if Sun is indeed a Delaware corporation, then I believe that there is diversity. But it's not an issue in the States. I mean, it's well known that you're the principal place of business here, too. So where does that leave you? Well, frankly, Your Honor, it's not an issue that I focus on. That's okay. That's okay. But ---- I guess what I'm driving at is if we're left ---- if the breach of ---- well, if all we're left with, if for ---- if all we're left with are breach of covenant, breach of contract claims and there's a lack of diversity, then certainly Judge Elston didn't abuse her discretion in failing to accept the tendered amendment, assuming that the civil rights claims were subsumed into a prior order. I'm sorry. I didn't follow the last part. If we're just left with those two State law claims, then it seems to me your amendment would be futile. But to get there, you have to find that there's no standing under 42 U.S.C. 1981? No. You have to find that her prior ruling on 1981, the proposed amendment was subsumed into her prior ruling on 1981. In other words, you're saying, Your Honor, that it's possible that the plaintiff can assert a breach of contract claim under 14610995, but any discrimination claim is governed by the arbitration provision? Well, yes. I guess what I'm driving at is to analyze the futility of the proposed amendment, not what you would like to do now, but the proposed amendment. Right. I would take a step back from the futility of the proposed amendment and focus ---- I think the parties need to be put back to where they should have been when Judge Elston issued her initial ruling, which ---- and she should have granted leave to amend then. And we should be put back there. And I think the abuse of discretion may include the refusal to accept that second amendment complaint. But I think the initial abuse was failing to grant leave to amend at all. And when we get ---- if we get sent back to the district court, we should have the right to put a new complaint. But one of the things we examined principally in determining whether there's abuse of discretion and not granting leave to amend is whether the proposed amendment would have been futile. That's correct, but ---- And in this case, it seems like it would have been futile because there's no Federal jurisdiction over the proposed amendment complaint. Well, that's only if you believe that 42 U.S.C. 1981 claims, all of them, from 92 to 97, under any contract between son and plaintiff, is governed by 1477, the contract 1477 with the arbitration. You have to find that. Well, isn't there just another way of saying that Judge Elston's order on that claim should be affirmed, right? I ---- That's all you know. Yes, but it requires a factual finding that I don't believe this record can support. And if I just may for one moment, I believe what we will allege, if we are allowed to go back to the district court, is that 1477 expired under its own terms. The discrimination under 42 U.S.C. 1981 was the refusal to give a new contract, was essentially a refusal to renew 1461. Well, that's an entirely different claim. And that's the claim that we want Leib to amend to offer. In my view, if the statute of limitations hasn't expired, you can file a new action on that new claim, can't you? Well, no, because I believe the discrimination happened in 1997, so it would be a 1998 expiration. They've got to get relation back anyway. You've got to get relation back, which ---- well, I don't know how that would work because it was a whole new lawsuit. So ---- and that could bring us, frankly, Your Honor, to the next ---- to one of the other issues in the brief which we haven't discussed, which was the court should have stayed the matter and not necessarily dismissed it, pending the arbitration. That would have ---- Which is one of the claims you've made in this case, yes? Yes. All right. I think we understand your position. Thank you. We appreciate the argument from both counsels. Thank you, Your Honor. This case is now submitted for decision. All right? Thank you. But I may provide that sheet of the case law to the court. Back to the court. All right. Then we'll stand in recess for the day. Thank you. Bye-bye. Thank you. Questioner 2 has a question.
judges: Tashima, Thomas, Silverman